[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal from a decision by the defendant denying the plaintiffs' combined application for an affordable housing subdivision and excavation permit for the premises located on the easterly side of Wooster Street, Bethel, Connecticut containing 27.927 acres brought pursuant to § 8-30g (b) of the Connecticut General Statutes. CT Page 6456
On June 2, 1999, the plaintiff Joseph A. Novella, as a co-applicant, filed a subdivision application and excavation permit with the Commission for the property located on the eastern side of Wooster Street containing 27.97 acres and requesting that the same be approved for 45 lots.
The subject property was originally zoned industrial and had previously been approved for an industrial subdivision in which several improvements were made including binder course for roads and some drainage. Since the subdivision was never completed, the approval for the same lapsed.
The property was then re-zoned from industrial to R-80 (residential, 80,000 sq. ft. per lot) and the plaintiff at the same time that he filed his application for a subdivision and excavation permit, also filed an application for a change of zone from R-80 to R-19 (residential, 10,000 sq. ft. per lot) which was granted by the Commission with stipulations on August 10, 1999.
The subdivision application consisted of 45 proposed lots in an R-10 residential zone and was an affordable housing application with 25% of the lots to be allocated as affordable housing units pursuant to Connecticut General Statutes § 8-30g.[1]
A public hearing on the subdivision and excavation application was held by the Commission on July 27, 1999 and continued until August 24, 1999. The August 24, 1999 public hearing was continued until September 14, 1999 at the request of the Plaintiff through his attorney's correspondence of August 19, 1999.
The public hearing was held and continued for a third time on September 14, 1999 to September 21, 1999.
The public hearing was closed on September 21, 1999. At the meeting of September 21, 1999, the matter for adjudication was continued by the Commission until its meeting of October 26, 1999.
On October 26, 1999, the Commission denied the plaintiff's application for subdivision and excavation permit on the basis that the same failed to comply with sections 95-3B, 95-3H and 95-3J of the Subdivision Regulations of the Town of Bethel and Sections 118-2, 118-10 and 118-44 of the Zoning Regulations of the Town of Bethel. Notice of denial was published in the Bethel Beacon on November 5, 1999.
The court finds that the plaintiff, Joseph A. Novella, is one of the owners of the subject property along with Robert T. Miller. As an owner of the property and an applicant to the defendant commission, the CT Page 6457 plaintiff is aggrieved by the denial of the application.
The court further finds that this application qualifies as an affordable housing proposal.
Under the provisions of § 8-30g (c)(1), the burden is "on the commission to prove, based upon the evidence in the record compiled before such commission that (A) the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record; (B) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (C) such public interests clearly outweigh the need for affordable housing; and (D) such public interests cannot be protected by reasonable changes to the affordable housing development. . . ."
In Christian Activities Council, Congregational v. Town Council,249 Conn. 566 (1999) the court reviewed the procedure to be followed from an affordable housing land use appeal under § 8-30g.
On the issue of burden of proof, the court stated in part as follows:
 The scope of judicial review under § B-30g (c) requires the town, not the applicant, to marshal the evidence supporting its decision and to persuade the court that there is sufficient evidence in the record to support the town's decision and the reasons given for that decision. . . . (emphasis provided)
The court further held that the burden under subparagraphs (B), (C) and (D) of § 8-30g (c)(1) "is the same as under subparagraph (A), namely, to establish that its decision and the reason cited in support of that decision are supported by sufficient evidence in the record.
In addressing the burden of sufficient evidence, the court further stated in part as follows:
 We further defined sufficient evidence in this context to mean less than a preponderance of the evidence, but more than a mere possibility. We stated that the zoning commission need not establish that the effects it sought to avoid by denying the application are definite or more likely than not to occur, but that such evidence must establish more than a mere possibility of such occurrence. . . . Thus, the commission was required to show a reasonable basis in the record CT Page 6458 for concluding as it did. [Internal quotation marks omitted.]
A mere possibility that a harm would result is not a sufficient ground to reject an application.
As stated in Christian Activities Council at page 589-590, the function of the court is as follows:
 Put another way, in determining whether the commission had sustained its burden under subparagraph (B) of establishing that its decision was necessary to protect substantial interests in health, safety, or other matters which the commission may legally consider, the court does not itself weigh the record evidence. Instead, the court applies the sufficient evidence in the record test of subparagraph (A). The court reviews the evidence and asks whether there was sufficient evidence for the commission. based on that evidence, reasonably to have concluded that there was some probability, not a mere possibility, that its decision was necessary to protect those interests. . . . [Internal quotation marks omitted; emphasis provided.]
 In other words, the court's task in determining whether the zoning commission has satisfied its burden under subparagraphs (C) and (D), is not to weigh the evidence itself. The court's task rather, is to review the evidence and determine whether, based upon that evidence, there was sufficient evidence for the commission reasonably to have concluded that: (1) the public interests that the commission sought to protect clearly outweigh the need for affordable housing; General Statutes § 8-30g (c)(1)(C); and (2) such public interests cannot be protected by reasonable changes to the affordable housing development. . . . [Internal quotation marks omitted; emphasis provided.]
The Christian Activities Council court further stated at page 597 in part as follows:
 Pursuant to subparagraph (C) of § 8-30g (c)(1), the defendant must establish that there was sufficient evidence in the record for it reasonably to have concluded that the public interest . . . clearly CT Page 6459 outweigh[ed] the need for affordable housing. . . . [Internal quotation marks omitted; emphasis provided.]
In discussing the distinction between an affordable housing application and a traditional zoning appeal the court stated at page 576 as follows:
 Third, if a town denies an affordable housing land use application, it must state its reasons on the record, and that statement must take the form of "a formal, official, collective statement of reasons for its actions." Id., 544. By contrast, in a traditional zoning appeal, if a zoning agency has failed to give such reasons, the court is obligated to search the entire record to find the basis of the (agency's) decision.
This court therefore concludes that the Commission must make findings under subparagraphs (A), (B), (C) and (D) of § 8-30g (c)(1) and that this court does not search the record to find a basis for the agency's decision if the commission has failed to give such reasons.
In discussing the requirement of § 8-30g (c)(1)(D) that the public interest cannot be protected by reasonable changes to the affordable housing development, the Christian Council court stated in part as follows:
 With respect to subparagraph (D) more specifically, however, we conclude that where the zoning commission establishes that there is sufficient evidence in the record to support its determination that there is a substantial public interest that would be harmed by the proposed affordable housing development, and where that interest and harm are site specific, in the sense that no changes to the proposed development reasonably can be determined to protect that interest on that specific site, the zoning commission has satisfied its burden. Because we conclude, moreover, that in the present case the defendant has satisfied its burden under subparagraph (D), we need not decide whether, and to what extent, it had an obligation to devise potential changes to the proposed development rather than to deny the application. . . .
 If the identified public interest is site specific in the sense that we have stated, then by definition CT Page 6460 there can be no reasonable changes to the affordable housing development that will protect the identified interest. (Emphasis provided)
This court concludes that the requirement for the commission "to have reasonably concluded" requires the commission to make a finding that the public interest grounds for rejecting the application clearly outweighs the need for affordable housing and the reason therefore. Further, except in the case of a site specific reason for the substantial public interest that would be harmed by the proposed affordable housing development, the commission must also address in writing subsection (D) of § 8-30g (c) (1) as to why the public interest cannot be protected by reasonable changes to the affordable housing development.
In summary the standard that this court will apply to this appeal is as follows:
 1. The Town, not the applicant, has the burden to marshal the evidence supporting its decision and to persuade the court that there is sufficient evidence in the record to support the Town's decision and the reasons given for that decision.
 2. This court reviews the evidence and asks whether there was sufficient evidence for the commission, based on that evidence, reasonably to have concluded that there was some probability, not a mere possibility, that its decision was necessary to protect the public interest that the commission sought to protect.
 3. The public interest that the commission sought to protect clearly outweigh the need for affordable housing.
 4. Such public interest cannot be protected by reasonable changes to the affordable housing development. Where the public interest and harm are site specific, in the sense that no changes to the proposed development reasonably can be determined to protect that interest on that specific site, the commission has met its burden even though it did not state why the public interest cannot be protected by reasonable changes to the affordable housing development.
 5. The commission must make each of the findings referred to in paragraphs 1, 2, 3 and 4 and the court then CT Page 6461 reviews the record regarding those findings.
The minutes of the defendant Planning and Zoning Commission dated October 26, 1999, state that the motion to deny the excavation permit and subdivision application of the applicant is on the grounds that 17 lots failed to comply with sections 93b, 93h, 118-2, 118-44 and two others do not meet the requirements in sections 118-10 and 95j. The transcript of the meeting of October 26, 1999, clearly shows that the intent in referring to section 93b was to refer to the subdivision regulations chapter 95, section 95-3B that provides as follows:
 All land which is to be subdivided shall be of such character that it can be used for building purposes without danger to health, safety and the general welfare of the community. Where land is subject to flooding, proper provision shall be made for protective flood control measures. The proposed subdivision shall be appropriate to the topography and location, giving due consideration and avoiding unnecessary change to contours and natural features.
The reference to section 93h is to the subdivision regulations chapter 95, section 95-3H that provides as follows:
 The Commission may require larger lots than are required by the Zoning Regulations where it deems necessary because of conditions affecting drainage, sanitary sewage disposal or water supply.
The reference to 95j refers to the subdivision regulations chapter 95, section 95-3J Roads that provides as follows:
 (1) No building permits will be issued for parcels within the subdivision until the binder course or first wearing surface has been installed and approved, in writing, by the Town Engineer for all roads within the sub-division.
 (2) When, in the opinion of the Commission, based on advice from the Town Engineer and/or Public Works Commission, there are conditions such as length of the road, number of roads, excessive cuts and fills, etc., the Commission may, if requested by the applicant, assign designated sections to the subdivision at the time of approval. Building permits may then be issued for the lots within these designated sections, when CT Page 6462 they are completed as required under § 95-3J (1).
The reference to 118-44 is the zoning regulation of the Town of Bethel, Section 118-44 Excavation and/or the Removal of earth materials. That section provides as follows:
 A. The purpose of this section is to control any excavation operations and to prevent the depreciation of land values, the creation of hazards to life and health and the permanent damage to the beauty and economic usefulness of property which may result from the unregulated and uncontrolled excavation and/or removal of sand, stone, loam, dirt and other earth products from property within the Town of Bethel.
B. General regulations.
 (1) No contours of any land in the Town of Bethel shall be altered by the excavation, removal or relocation of earth, loam, topsoil, sand, gravel, clay, stone or minerals or by the depositing of any material, natural or otherwise, except as provided in this regulation.
 (2) A permit to excavate and/or remove earth materials may be granted, provided that the excavation and/or removal is clearly incidental to a bonafide construction operation on the premises which is in accordance with these regulations. [Amended 10-12-1993]
 (3) In determining whether or not such excavation and/or removal is clearly incidental, the Planning and Zoning Commission should consider factors such as the feasibility of constructing the building or other structure at the existing contour, the percent of lot area to be excavated, whether or not the difficulty of construction at existing contours was the result of prior acts of the applicant in interest, the primary nature of the applicant's business and any additional relevant factors affecting the lot in question. [Added 10-12-1993]
 (4) The maximum depth allowable for construction of CT Page 6463 a pond shall be the least necessary in order to carry out its purpose. [Added 10-12-1993]
C. Exemptions from regulations. The following are specifically exempt from this regulation:
 (1) Changes in contour directly related to the bonafide construction or alteration of a building or structure when such construction or alteration is authorized by a valid building permit and involves the removal, depositing or relocation of no more than five hundred (500) cubic yards of material.
The reference to 118-10 is to the zoning regulations to the Town of Bethel, Section 118-10 Required Frontage provides as follows:
 No building shall be built on any existing or proposed lot except as provided in section 118-9 or 118-40 unless said lot has the required frontages as a dedicated street or a proposed street which has been approved and so bonded by the Planning and Zoning Commission for the zone in which it lies.
The October 26, 1999, minutes of the meeting of the Planning and Zoning Commission when it rejected the application states various reasons as to why it believed that the aforementioned sections of the Zoning Regulations and Planning Regulations were not met. Those reasons are as follows:
 1. Sections 95-3B of the subdivision regulations requires that all land which is to be subdivided shall be of such character that it can be used for building purposes without danger to the community and section 95-3H requires or states that the commission may require larger lots than are required by the Zoning Regulation where it deems necessary because of conditions affecting drainage, sanitary sewage disposal or water supply. Lots 1-4, 6-12, 18, 20, 24, 25, 26, and 27 show construction on very steep slopes with inadequate detail on retaining walls and grading. The information that was provided by the applicant does not prove that the existing slopes are safe to develop as proposed or that adequate measures to address ground water surface water or slope stability have been provided. The applicant has not provided CT Page 6464 sufficient information that would justify changing that conclusion. The most recent information provided by the applicant dated September 20, 1999, regarding construction on steep slopes does not completely address the comments in the July 20, 1999 review, the follow-up comments dated September 14, 1999, or the issues raised at the September 14, 1999 public hearing. (Emphasis provided)
To the extent the commission voted to deny the application on the grounds that "the information provided by the applicant does not prove that the existing slopes are safe to develop as proposed or that adequate measures to address ground water surface water or slope stability have been provided" the court finds that those are not valid reasons to deny the application. Under the provisions of section 8-30g (c)(1) the burden is on the commission to prove based on the evidence in the record compiled before the commission that the reasons for the decision are support by sufficient evidence in the record. The commission has the burden under 8-30g (c) to marshal the evidence supporting its decision and to persuade the court that there is sufficient evidence in the record to support the Town's decision and the reasons given for that decision. Further, those reasons cannot be upheld due to the fact that commission has not met its burden under section 8-30g (c)(1)(C) and (D) in that the commission failed to address the balancing test of subparagraph (C) by determining whether the public interest that the commission sought to protect clearly outweigh the need for affordable housing and the commission failed to address subparagraph (D) as to whether that public interest cannot be protected by reasonable changes to the affordable housing development.
 2. The commission further gave as reasons for denying the application that the most recent materials submitted by the applicant regarding construction on steep slopes does not completely address the comments made in the July 20, 1999 review, in the applicant's follow-up comments dated September 19, 1999 or the issues raised in the September 14, 1999 public hearing.
The court finds that those reasons are not sustainable in that they are too vague. Further, the Commission failed to address whether the public interests that the Commission sought to protect in the July 20, 1999 review or the issues raised at the September 14, 1999 public hearing clearly outweigh the need for affordable housing and that such public interest cannot be protected by reasonable changes to the affordable housing development. CT Page 6465
 3. The Commission further gave as reasons for the denial that there are still missing grades and some grades show drainage towards the buildings and the applicant has only provided some of the floor elevations and basement elevations.
The court finds that those are not valid reasons to deny the application since the Commission did not satisfy its burden under 8-30g
(c)(1)(C) and (D) due to the fact that the commission did not conclude that the public interest that the commission sought to protect clearly outweighs the need for affordable housing and that such public interests cannot be protected by reasonable changes to the affordable housing development.
 4. The Commission further gave as reasons for the denial that there is still no soil investigation or testing that can be used to substantiate their design criteria for walls, there are no stability calculations for the walls or slopes nor any soil design values to substantiate erosion control efforts or stability of proposed design and there is not monitoring of or evaluation of ground water levels even though there are wetlands and ground water seeps in the detention basin.
To the extent the Commission in these reasons has placed the burden on the applicant to substantiate design criteria for walls and stability calculations for walls or slopes or soil design values, those are not valid reasons since the burden is on the Commission to prove by sufficient evidence its reasons for denial. Further, those reasons can not be used to deny the application since the Commission did not satisfy its burden under 8-30g (c)(1)(C) and (D) in that the Commission failed to conclude that the public interest that the Commission sought to protect clearly outweigh the need for affordable housing and failed to conclude that the public interest cannot be protected by reasonable changes to the affordable housing development.
 5. The Commission further gave as a reason for denying the application that the applicant is proposing grading in deep cuts at the toe of a large steep slope that requires large retaining walls that are up to 18 feet high and that the applicant has submitted two typical reinforced concrete retaining wall sections but not the supporting calculations or construction sequence that were requested. CT Page 6466
This is not a valid reason to deny the application since the Commission did not find that the design of the typical reinforced concrete retaining wall sections was not an adequate design but merely found that the design did not include supporting calculations or construction sequence. Further, this is not a valid reason for the denial because the Commission has failed to address section 8-30g (c)(1)(C) and (D).
 6. The Commission further gave as a reason for denying the application the fact that the plans did not show all of the limit of disturbance behind the retaining walls necessary to construct and backfill the retaining wall structures.
This is also not a valid reason to deny the application since the Commission did not satisfy its burden under 8-30g (c)(1)(C) and (D) in that the Commission failed to address subsections C and D.
 7. The Commission further gave as reasons for denying the application that the watershed map in the rear of the drainage analysis indicates a large slope draining down to lots 1-20 with PVC pipe buried behind the retaining walls which outset to the storm drainage system in the street and other areas. Additionally, the applicant has shown a retaining wall cross-section which indicates small swale at the top of the wall. The information and an overall drainage system with diversion ditches was not shown on the supplemental subdivision maps to convey surface runoff and ground water away from the walls, basements and yards that are being cut into the hillside.
Once again these reasons are not valid reasons to deny the application since the Commission has failed to address with these reasons section8-30g (c)(1)(C) and (D).
 8. The commission also gave as reasons for denying the application regarding the steep slopes the fact that a number of lots have slope grades of 25% or greater covering anywhere from 30 to 100% of their minimum square area as that term is defined in the town of Bethel's Zoning Ordinance and that the seventeen lots which have these excessive slopes in the minimum square area have an approximate average slope steepness as follows: Lots 1-4, 30-37%, Lots 6-18, 25%, Lots 7-11, 40-54%, Lots 12, 20 and 24, 8%, and Lots 25, 26 CT Page 6467 and 27, 37%.
Once again these are not valid reasons to deny the application since the Commission failed to address section 8-30g (c)(1)(C) and (D) regarding these reasons.
 9. The Commission further gave as reasons for denying the application that 17 lots in the subdivision application are of such character that they cannot be used for building purposes without danger to the health, safety and general welfare of the community and that the applicant has failed to demonstrate that the lots in question are safe building lots.
Once again these are not valid reasons for denying the application since the commission failed to address section 8-30g (c)(1)(C) and (D).
 10. The commission further gave as reasons for denying the application that building lots 21 and 22 under the subdivision regulations do not have the required frontage to be considered building lots with the applicant seeking to have these 2 lots approved in spite of the fact that to do so will be in violation of section 118-10 of the Zoning Regulations and that to approve these lots would open the door for other builders to seek approval for subdivision without bothering to build completed roads with the result being that the Town would end of having to bear the cost of putting in roads that developers do not and that those 2 lots would not be in the general interest of the community in that fire and/or police efforts would be hampered by lack of a developed road that would deny a quick entry into the house and that if the applicant wishes to have those 2 lots approved all he need do is extend the road further, therefore, giving lots 21 and 22 the required frontage.
Once again the court finds that those are not valid reasons to deny the application since the commission failed to address 8-30g (c)(1)(C) and (D).
Further the two lots can be considered as building lots provided the right of way is dedicated to the Town and is improved by the applicant to Town standards. CT Page 6468
In a report to the Planning and Zoning Commission from Joseph Potenza, Planning and Zoning Official, that was marked as exhibit 34, he states in part as follows:
 Lots 21 and 22 can only be consider as buildable lots if they are provided with the legal minimum street frontage required as specified in the R-10 Zone that applies to the property and with the relevant provisions of the Town of Bethel subdivision regulations. As represented on the subdivision map submitted by the applicant, these lots are proposed to be served by a common driveway and do not have frontage on Apollo Road. Reference is made to Section 118-10 of the Zoning Ordinance states that "No building shall be built on any existing or proposed lot . . . unless said lot has the required frontage to a dedicated street or a proposed street which has been approved and so bonded by the Planning and Zoning Commission for the zone in which it lies. . . ." Also cited as reasons why these two lots can only be counted as buildable lots if Apollo Rd. is improved to town road standards is Section 95-3J (1) of the Subdivision Regulations. This section states that: "No building permits will be issued for parcels within the subdivision until the binder course or first wearing surface has been installed and approved, in writing, by the Town Engineer for all roads within the subdivision."
 Because of the age of the roads, utilities and drainage and storm water detention area that were previously installed, but not fully completed, as part of a previously approved but since expired industrial subdivision, if this subdivision is approved, it should be subject to the following: the provision of road core samples that are found acceptable to the Town Engineer; testing of the water and sewer lines and modifying as required; modification of the drainage system as proposed in the engineering report submitted by James Palmer, P.E. and the posting of a bond as established by the Town Engineer.
 Any approval of the drainage plan should be made contingent on the applicant's assuming responsibility for maintaining the storm water detention basins prior CT Page 6469 to the time that an association that will have the responsibility to maintain the detention basis in perpetuity is established. The applicant should further agree to prepare maintenance agreements to be made a provision of the deed for properties in the subdivision.
The Commission also denied the application on the grounds of non-compliance with section 118-44 of the Zoning Regulations. In the minutes of the Commission denying the application there is no discussion as to the reason why that regulation has not been complied with. Further, these lots are exempted from the requirements of section 118-44 by virtue of the provisions of section 118-44C (1) that provides that changes in contour directly related to the bonafide construction of a building and involves the deposit or relocation of no more than 500 cubic yards of material are exempt. The evidence presented at the hearing shows that the Commission has always interpreted that section as referring to 500 cubic yards per lot and that this application did not exceed change of the contours in any one lot by 500 cubic yards or more. In addition, section 118-44 cannot be used as a valid reason to deny the application since the commission failed to address section B-30g (c)(1)(C) and (D).
In a report to the Planning and Zoning Commission from the Inland Wetland Commission marked as Plaintiff 31, the report states that the Inland Wetland Commission voted to issue a permit with various conditions. Those conditions are still applicable.
If the commission does not satisfy its burden of proof under 8-30g (c) (1), the court shall wholly or partly revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence and the record before it.
 ORDER
The decision of the defendant commission is reversed and all of the approvals requested by the applicants are ordered granted with the followings revisions and modifications:
 1. The provision of road core samples that are found acceptable to the Town Engineer;
 2. The posting of a bond as established by the Town Engineer;
 3. The approval of the drainage plan is made contingent on the applicant's assuming responsibility for CT Page 6470 maintaining the storm water detention basins prior to the time that an association that will have the responsibility to maintain the detention basin is perpetually established. The applicant must further agree in writing to prepare maintenance agreements that are to be made a provision of the deed for the properties in the subdivision.
 4. All retaining walls are to be constructed in accordance with a typical retaining wall detail found in the letter from L.P.R. Associates to the defendant Planning and Zoning Commission that was marked as exhibit 24.
 5. Lots 21 and 22 may be counted as building lots only if the road is improved to Town standards to meet the necessary frontage requirements.
 ________________________ AXELROD, JUDGE